UNITED STATES

v.

**Airman Joseph W. LEE, United States Air Force.**

**ACM S29894 (recon).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 14 Sept. 2000.

Decided 9 Sept. 2002.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Jeffrey A. Vires, and Captain Jennifer K. Martwick.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo and Lieutenant Colonel Lance B. Sigmon.

Before SCHLEGEL, BRESLIN, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT UPON RECONSIDERATION

BRESLIN, Senior Judge:

The appellant was charged with possessing child pornography in violation of 18 U.S.C. § 2252A, made applicable to courts-martial through Article 134, UCMJ, 10 U.S.C. § 934. A special court-martial comprised of a military judge sitting alone found the appellant guilty, contrary to his pleas. The sentence adjudged and approved was a bad-conduct discharge, confinement for 75 days, and reduction to E–1.

Upon our first review of this case under Article 66(c), UCMJ, 10 U.S.C. § 866(c), the appellant maintained the evidence was insufficient to show that the child pornography had moved in interstate commerce. This Court affirmed the findings and sentence on 19 March 2002. On 16 April 2002, the Supreme Court of the United States issued its opinion in *Ashcroft v. Free Speech Coalition,* — U.S. ——, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), concerning the constitutionality of portions of the Child Pornography Prevention Act of 1996, 18 U.S.C. §§ 2251–2260. Thereafter, this Court granted the appellant's timely motion for reconsideration to assess the impact of the Supreme Court's ruling on this case. The appellant now contends that his conviction must be set aside because it was based upon definitions of an offense later determined to be unconstitutionally overbroad in *Free Speech Coalition.*

We considered carefully the record of trial, and again affirm the findings and sentence.

### Facts

The appellant resided in a military dormitory on Goodfellow Air Force Base, Texas, while attending training. On 25 March 2000, the appellant's roommate noticed the appellant's laptop computer displaying a changing series of pictures of young females in the nude. The roommate described the females in the photographs as "preteen," based upon their lack of physical maturity. The roommate uttered an exclamation in surprise and disgust. That caught the attention of other airmen nearby, who also looked at several of the images on the computer screen. The other airmen described the images as being of very young girls, eight to twelve years old, in various states of undress. Some were posed to display their pubic area.

The appellant's roommate left the dormitory room, and encountered the appellant in the parking lot near the dormitory. Without preamble, the roommate told the appellant to "get it off your computer before I get back." The appellant uttered his own exclamation, and ran to his room.

The following day, two of the airmen confronted the appellant about the images on his computer. The airmen recall the appellant admitting that the girls were about "ten years old," or "eight to twelve years old." The airmen expressed their dismay to the appellant, who subsequently commented, "I just want to kill myself." The airmen reported that remark to their superiors, who forwarded the information to the Air Force Office of Special Investigations (AFOSI).

A special agent from the AFOSI interviewed the appellant, who confessed orally and in writing. The appellant admitted that, before he entered active duty in the Air Force, he found child pornography on the Internet using America On–Line, and saved it in various specific files on his computer. He deleted the images from the computer shortly after his roommate's complaint. The AFOSI analyzed the hard drive of the appellant's computer, and recovered some images of young girls in a state of undress that had been previously deleted.

At trial, the appellant did not contest the constitutionality of the statute outlawing the possession of child pornography. In fact, the appellant specifically requested that the military judge consider certain definitions of key legal concepts, including the definitions of child pornography later challenged in *Free Speech Coalition*. The defense did not call witnesses, but argued that the images did not constitute child pornography because it was not shown, beyond a reasonable doubt, that the images represented a "lascivious exhibition of the genitals or pubic area," as required by 18 U.S.C. § 2256(2)(E). The military judge found the appellant guilty of the charged offense. The defense did not request special findings, therefore the military judge did not put any special findings on the record. Rule for Courts–Martial (R.C.M.) 918(b).

### Law

In *Free Speech Coalition*, the Supreme Court found that some of the language in 18 U.S.C. § 2256 defining child pornography unconstitutionally infringed upon free speech. Specifically, the Court found that the language of § 2256(8)(B), proscribing an image or picture that "appears to be" of a minor engaging in sexually explicit conduct, and the language of § 2256(8)(D), sanctioning visual depictions that are "advertised, promoted, presented, described or distributed in such a manner that conveys the impression that the material is or contains a depiction of a minor engaging in sexually explicit conduct," were overly broad and, therefore, unconstitutional. *Id.* at 1405–06. Nonetheless, the Supreme Court reiterated that the government could constitutionally prohibit pornography involving actual children. *Id.* at 1396. *See generally New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); 18 U.S.C. § 2256(8)(A). Notably, the decision in *Free Speech Coalition* did not challenge the constitutionality of the so-called "morphed" images (i.e. a visual depiction that has been "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct") addressed in 18 U.S.C. § 2256(8)(C). *Free Speech Coalition,* —— U.S. at ——, 122 S.Ct. at 1397.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we will approve only those findings of guilt we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Reed*, 54 M.J. 37, 41 (2000). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

*Analysis*

■ We must review the record of trial to determine whether the appellant's conviction was legally and factually sufficient in light of the decision in *Free Speech Coalition*. We note at the outset that the appellant affirmatively asked that the military judge consider as part of the definition of child pornography the very phrases the Supreme Court found unconstitutionally overbroad in *Free Speech Coalition*. However, there was no discussion about whether the request was intended to waive any challenge to the constitutionality of the charged offense. The parties might argue whether this constituted "forfeiture" or "waiver" of the issue. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'") (citation omitted). The parties might argue whether a forfeiture or waiver would be effective in this case. *See United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 1787, 152 L.Ed.2d 860 (2002) ("a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right...." *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)). We find it unnecessary to decide this question, however, because we may consider any allegation of error under the plenary review authority conferred by Article 66(c), UCMJ. *See also* Mil. R. Evid.

103(d). This Court "is not constrained from taking notice of errors by the principles of waiver and plain error." *United States v. Powell*, 49 M.J. 460, 464 (1998) (citing *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991)). In order to find plain error, we must find three elements: (1) that there was "error"; (2) that the error was "plain," that is, "clear" or "obvious"; and (3) that the plain error materially prejudiced substantial rights. *Powell*, 49 M.J. at 462–64 (1998) (citations omitted). The appellant has the burden of establishing plain error. *United States v. Reist*, 50 M.J. 108, 110 (1999).

We consider first the legal sufficiency of the conviction. Of course, we review questions of law de novo. *United States v. McElhaney*, 54 M.J. 120, 125 (2000); 1 Steven Childress & Martha Davis, *Federal Standards of Review* § 2.13 (3d. ed.1999) ("the question of whether specific conduct is constitutionally protected is ultimately an issue of law"). It is clear the military judge properly considered the law regarding the elements of the offense of possessing child pornography, as it existed at that time. *See* 18 U.S.C. § 2252A, 2256(8); *United States v. James*, 55 M.J. 297, 299 (2001). Just as clearly, that law changed with the decision of the Supreme Court in *Free Speech Coalition*. Conducting our de novo review in light of *Free Speech Coalition*, we must conclude that it was an error of law to consider within the definition of child pornography an image or picture that "appears to be" of a minor engaging in sexually explicit conduct (10 U.S.C. § 2256(8)(B)), and visual depictions that are "advertised, promoted, presented, described or distributed in such a manner that conveys the impression that the material is or contains a depiction of a minor engaging in sexually explicit conduct," (18 U.S.C. § 2256(8)(D)).

Having found an error of law, we must consider whether the error was "plain" or "obvious." *Powell*, 49 MJ. at 463. Of course, the error was not "plain" to the military judge at the time of trial—indeed, it was not error at that time. However, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain'

at the time of appellate consideration." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Thus we find the error was "plain" or "obvious," considering the law as it stands today.

Having found "error" that was "plain," we must determine whether the error materially prejudiced the appellant's substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a). "[W]hile Courts of Criminal Appeals are not constrained from taking notice of otherwise forfeited errors, they are constrained by Article 59(a), because they may not reverse unless the error 'materially prejudices the substantial rights of the accused.' ... Article 59(a) constrains their authority to reverse...." *Powell,* 49 M.J. at 464. *But see United States v. Thompson,* 57 M.J. 319 (2002).

One might argue that where the possibility exists that an accused was convicted of a crime that was unconstitutional, automatic reversal is required. However, the Supreme Court has made it clear that automatic reversal is required only in a "very limited class of cases" where the error is "structural." *Johnson,* 520 U.S. at 468, 117 S.Ct. 1544 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). *See United States v. Reynolds,* 49 M.J. 260, 262–63 (1998). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Indeed, the Supreme Court has observed, "most constitutional errors can be harmless." *Fulminante,* 499 U.S. at 306, 111 S.Ct. 1246.

Turning to the case at bar, it appears the military judge improperly considered some definitions relevant to the offense. The error may be analogized to improperly instructing the jury on an element of an offense. *California v. Roy,* 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam). The Supreme Court holds that such errors are subject to review under the harmless-error standard. *See Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair"); *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (harmless-error applied although the judge did not submit the element of materiality to the jury); *Yates v. Evatt,* 500 U.S. 391, 402, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (constitutionally erroneous instruction shifting the burden of proof subject to harmless-error review); *Pope v. Illinois,* 481 U.S. 497, 504, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (harmless-error analysis appropriate, even though trial court improperly instructed the jury on an element of an obscenity charge); *Rose v. Clark,* 478 U.S. at 576, 106 S.Ct. 3101 (harmless-error inquiry appropriate where jury incorrectly instructed on the element of malice in a murder trial).

"[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The test for determining whether a constitutional error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates,* 500 U.S. at 403, 111 S.Ct. 1884. "If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error ... it should not find the error harmless." *Neder,* 527 U.S. at 19, 119 S.Ct. 1827.

We must review the record of trial to determine whether the error was harmless. *Id.; United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) ("*Chapman* mandates consideration of the

entire record prior to reversing a conviction for constitutional errors that may be harmless"). Specifically, we must examine the record to determine whether the definitions of child pornography struck down by the decision in *Free Speech Coalition* contributed to the verdict, as explained by the Supreme Court. *Yates*, 500 U.S. at 403–04, 111 S.Ct. 1884.

We consider first whether the "appears to be" language from 18 U.S.C. § 2256(8)(B) improperly affected the verdict. The Supreme Court found the language of 18 U.S.C. § 2256(8)(B) overly broad because it would include "computer-generated images," "a Renaissance painting depicting a scene from classical mythology," or scenes from Hollywood movies which did not involve any children in the production process. *Free Speech Coalition*, —— U.S. at ——, 122 S.Ct. at 1397. Clearly this case does not involve drawings, paintings, sculpture, or scenes from Hollywood movies filmed with adult actresses. The Supreme Court also took note of the Congressional findings following 18 U.S.C. § 2251 that new technology makes it possible to create realistic images of children who do not exist. *Id.* at 1396.* However, there is not a shred of evidence in the record suggesting that these images are "computer-generated," or "virtual" photographs. To the contrary, the appellant in his confession and all the witnesses described the images in question as photographs of young girls.

The appellant argues that the prosecution "put forth absolutely *no* evidence that the pictures depicted real children," thus the military judge "had to have determined" the images "appeared to be" of minors. We do not agree. The appellant's oral confessions admitted that the images were pictures of young girls between the ages of eight and twelve years old. The logical inference is that they were actual children; there was no suggestion to the contrary. The witnesses also described the pictures in terms indicating they were photographs of real children. Finally, the AFOSI recovered some of photographs in question, and they were included in the record of trial. Certainly the photographs themselves are evidence a fact finder may consider to determine whether actual children were involved in the production of the images. We find the appellant's admissions and the testimony of the witnesses are supported by the pictures themselves. *See James*, 55 M.J. at 301. The prosecution did not argue that the evidence was sufficient because it "appeared to be" children in the photographs, nor is there any indication that this theory was part of the government's case. We find no suggestion in the record that the pictures in question were considered child pornography only because they "appeared to be" children. Thus, we conclude that any error in considering that definition in this case was harmless beyond a reasonable doubt.

▪ Similarly, there was no indication that the images were considered to be child pornography because they were "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" the material was child pornography, as provided in 18 U.S.C. § 2256(8)(D). Indeed, there was no evidence about the manner in which the images were advertised, presented, promoted or described. Rather, it appears the appellant and the witnesses based their opinion of the content of the pictures upon their own examination of the images. We find the definition in 18 U.S.C. § 2256(8)(D) did not play a part in this case. *Neder*, 527 U.S. at 19, 119 S.Ct. 1827; *United States v. Appeldorn*, 57 M.J. 548, 549–50 (A.F.Ct. Crim.App.2002). We conclude that any error of law in providing that definition was harmless beyond a reasonable doubt. Under the circumstances, it is not necessary for this Court to determine whether the evidence indicating the appellant believed the pictures to be of actual children was sufficient to support a conviction for the attempted possession of child pornography under 18 U.S.C. § 2252A(b)(2).

Finally, we review the record of trial for factual sufficiency, as required by Article 66(c), UCMJ, and *Turner*, 25 M.J. at 325.

---

* Justice Thomas noted that the Government pointed out no cases where the defendant was acquitted based upon a "computer-generated images" defense, and described it as "speculative." *Free Speech Coalition*, —— U.S. at ——, 122 S.Ct. at 1406 (Thomas, J., concurring in the judgment).

We are ourselves convinced of the appellant's guilt beyond a reasonable doubt.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *Turner*, 25 M.J. at 325. Accordingly, the findings and sentence are

AFFIRMED.