UNITED STATES

v.

**Staff Sergeant Frank SANCHEZ Jr., United States Air Force.**

**ACM 34940.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 19 Oct. 2001.

29 Sept. 2003.

Appellate Counsel for Appellant: Captain L. Martin Powell (argued), Colonel Beverly B. Knott, Major Terry L. McElyea, Major Jefferson B. Brown, and Major Patricia A. McHugh.

Appellate Counsel for the United States: Lieutenant Colonel Lance B. Sigmon (argued) and Colonel LeEllen Coacher.

Before BURD, Senior Judge, STONE, Senior Judge, and ORR, Appellate Military Judge.

OPINION OF THE COURT

STONE, Senior Judge:

At a general court-martial convened at Cannon Air Force Base (AFB), New Mexico, a military judge sitting alone convicted the appellant, contrary to his pleas, of two violations of Article 134, UCMJ, 10 U.S.C. § 934. The first offense involved indecent acts on a child on two occasions, while the second offense involved possession of 23 visual depictions of child pornography, contrary to 18 U.S.C. § 2252A(a)(5)(A). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for 24 months, and reduction to the grade of E–1. For the reasons set forth below, we affirm.[1]

---

1. We heard oral argument on this case at Maxwell AFB, Alabama, as part of our Project Outreach program.

## I. Background

The appellant was a 36–year–old non-commissioned officer at the time he committed indecent acts on RDS, a 15–year–old military dependent. He lived in base housing, and the victim was a neighbor and good friend of one of the appellant's two teenage stepdaughters. The appellant and his wife were also good friends with RDS's family.

The first incident occurred in January 2000. The appellant went to the victim's house, spoke briefly with her parents, and asked where she could be found. At the time, RDS was using a computer in the dining room. The appellant found a chair and sat down next to her. After talking with her for five minutes or so, he placed his hand on her breast, fondled her, and asked, "Do you like it?" The second incident occurred several weeks later when RDS was spending the night with the appellant's younger stepdaughter. RDS was watching television in the stepdaughter's bedroom. After his stepdaughter fell asleep, the appellant came into the room, knelt down, put his arm around RDS, and asked how she was doing. He then put his hand under her shirt and bra and on her breast. Once again, he asked if she liked it. He also asked her if she wanted to go with him to the living room. She cried and said no.

For several months, the victim never told anyone about the appellant's behavior because of the close relationship she and her parents had with the Sanchez family. However, in August of 2000, some neighbors were sitting around and discussing the appellant's relationship with his older stepdaughter and how they would not be surprised if he were the father of the older girl's baby. Upon hearing this discussion, the victim began crying and told her mother about the two incidents that had occurred earlier that year.[2] The mother immediately notified the Air Force Office of Special Investigations (AFOSI).

Under the supervision of AFOSI agents, the victim made a telephone call to the appellant. She told the appellant that her mother found a note he wrote to her apologizing for touching her breast. Upon hearing this, the appellant responded, "Yeah? Oh, shit." When RDS told him that her mother had notified AFOSI, he tried to convince her to tell the agents the breast touching incidents were just accidents.

Because RDS told investigators the appellant had sent her two e-mails apologizing for what happened and another email that included an electronic picture of a bouquet of flowers, AFOSI agents eventually seized and searched the appellant's home computer. A forensic analysis of the computer failed to find these e-mails, but did reveal 23 visual depictions of minors engaged in sexually explicit conduct.

## II. Indecent Acts With a Child

The appellant contends the evidence is factually insufficient to support his conviction for indecent acts with a child. He claims his actions were either an accident or that RDS is unworthy of belief because of inconsistencies in her statements to investigators.[3] We do not agree.

We are guided in this analysis by our statutory mandate found in Article 66(c), UCMJ, 10 U.S.C. § 866(c), and the decisions of our superior courts. We may affirm only those findings of guilt that we find are correct in law and fact and determine, on the basis of the entire record, should be approved. *Id.* The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, any rational factfinder could have found all of the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Reed,* 54 M.J. 37, 41 (2000). We are required to

---

2. She also described a third indecent act. However, the military judge found the appellant not guilty of this allegation.

3. The appellant raises this issue pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

conduct a de novo review of the entire record of trial, taking "a fresh, impartial look at the evidence" and applying "neither a presumption of innocence nor a presumption of guilt" and "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (2002).

Having carefully reviewed the evidence in the record of trial and making allowances for not observing the witness, we are convinced beyond a reasonable doubt the appellant engaged in indecent acts with RDS, a minor, on two occasions. We are similarly convinced the appellant committed these acts with the intent to arouse, appeal to, and gratify his own lust, passions, and sexual desires and that of the victim. Moreover, we hold these acts were prejudicial to good order and discipline in the armed forces and of a nature to bring discredit on the armed forces. In short, the evidence pertaining to whether the appellant committed two indecent acts upon RDS is both legally and factually sufficient.

### III. Child Pornography—Constitutional Challenge

■ The appellant was convicted of one specification of knowingly and wrongfully possessing one or more images of child pornography in a building owned by, leased to, or otherwise under the control of the United States Government, contrary to 18 U.S.C. § 2252A(a)(5)(A) and in violation of Article 134, UCMJ. Although the appellant did not assert a constitutional challenge at trial or otherwise argue the images found on his computer did not depict real children, he now asks this Court to set aside the finding of guilty to this specification based on the Supreme Court's ruling in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

*Free Speech Coalition* involved a facial challenge to the Child Pornography Prevention Act (CPPA) of 1996, 18 U.S.C. §§ 2251–2260. The Supreme Court held that the definitions of child pornography found in 18 U.S.C. § 2256(8)(B) and (D) were overbroad and unconstitutional. The invalid definition at § 2256(8)(B) applied to any visual depiction that "appear[ed] to be" of a minor

engaged in sexually explicit conduct, whereas the definition at § 2256(8)(D) applied to any visual depiction that was "advertised, promoted, presented, described, or distributed in such a matter that conveys the impression that the material is or contains any visual depiction of a minor engaging in sexually explicit conduct."

On appeal, the appellant focuses on the first invalid definition. He argues that because the government provided no evidence, other than the photographs themselves, to establish that the images were of real children, the military judge was left with nothing more than the impermissible "appears to be" language of § 2256(8)(B) upon which to base his findings. In essence, the appellant asks this Court to establish a corroboration requirement to ensure convictions under the CPPA are constitutional. He contends that after *Free Speech Coalition*, a conviction under the CPPA requires independent evidence—in the form of medical testimony, admissions by the appellant, or testimony from other witnesses—that the photos in question depict actual minors engaged in sexually explicit conduct.

Use of the definitions declared unconstitutional in *Free Speech Coalition* is error. *United States v. Thompson*, 57 M.J. 319 (2002) (mem.); *United States v. Hall*, 312 F.3d 1250, 1259–60 (11th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1646, 155 L.Ed.2d 502 (2003). Most constitutional errors, however, do not require automatic reversal and are subject to a de novo review by reviewing courts to determine whether the error is harmless beyond a reasonable doubt. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This includes errors involving the use of the unconstitutional definitions of the CPPA. *United States v. Lee*, 57 M.J. 659, 662 (A.F.Ct.Crim.App.2002), *pet. granted*, 58 M.J. 142 (2003); *United States v. Richardson*, 304 F.3d 1061 (11th Cir.2002), *cert. denied*, 537 U.S. 1138, 123 S.Ct. 930, 154 L.Ed.2d 832 (2003); *United States v. Ellyson*, 326 F.3d 522 (4th Cir.2003). When con-

stitutional error is at issue, the burden is on the government to establish beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman,* 386 U.S. at 24, 87 S.Ct. 824; *United States v. McDonald,* 57 M.J. 18, 20 (2002). The test for constitutional harmless error has been further described as whether "it [is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]" *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *McDonald,* 57 M.J. at 20.

We now turn to an examination of the entire record and a careful review of each image to determine whether the definitions of child pornography struck down in *Free Speech Coalition* contributed to the appellant's conviction. *Lee,* 57 M.J. at 663. In conducting our review, we have relied on the images themselves, believing they have probative value independent of the need for further amplification by other evidence. As in virtually all factual matters, we are free to rely on circumstantial evidence alone. *See generally United States v. Stearns,* 550 F.2d 1167 (9th Cir.1977) (even if direct testimony as to foundational matters is absent, the contents of a photograph itself, together with such circumstantial or indirect evidence as bears on the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence). Given the overwhelmingly contraband nature of the pictures in this case, independent or corroborating evidence is not necessary to reach a factual determination.

First, we conclude that the images in question are not protected speech involving youthful adult pornography. The images are not adults posing as older teens on the order of Shakespeare's *Romeo and Juliet* or similar literary or artistic works. They portray nude male and female children, alone or with other children or adults, engaged in sexually explicit conduct. Their physical immaturity is readily apparent from their head, hand, and body proportions, as well as their lack of secondary sexual development. Most of them are prepubescent while some are closer to pre-school age.

Second, we conclude these are not images of virtual children. The images found on the appellant's computer were crudely composed and executed without any hint of a professional effort. We are unable to discern any evidence of retouching as is often seen in the popular media. Generally, the children are not costumed, made up, or specially lighted so as to enhance their appearance or create special effects. The backgrounds to the images also suggest they are unadulterated in any fashion. In one image, for example, an empty animal cage is carelessly left in the background. In another, a half-empty soda bottle is evident. A baby blanket is present in yet another.

We conclude the unconstitutional definitions of the CPPA did not play any part in this case. *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Given the overwhelming evidence that the images are of real children, it is clear beyond a reasonable doubt that any rational factfinder would have found the defendant guilty absent the error. *Neder,* 527 U.S. at 18, 119 S.Ct. 1827. We further conclude there was no material prejudice to the appellant's right to free speech. Article 59(a), UCMJ, 10 U.S.C. § 859(a). Finally, under the authority vested in this Court pursuant to Article 66(c), UCMJ, we are ourselves convinced beyond a reasonable doubt that one or more of the images found on the appellant's computer were of real children and thus constituted evidence of a "most serious crime and an act repugnant to the moral instincts of a decent people." *Free Speech Coalition,* 535 U.S. at 244, 122 S.Ct. 1389.

### IV. Child Pornography— Knowing Possession

■ The appellant also alleges the government failed to prove he knowingly possessed child pornography. To properly analyze this issue requires a review of the testimony of AFOSI Special Agent (SA) Fraser. He testified that after making a mirror image of the hard drive of the appellant's computer, two methods were used to search the appellant's computer. The first method was a "physical level search" that identified Prosecution Exhibits 2 through 13, and the second was a

"logical level search" that identified Prosecution Exhibits 14 through 24.

Investigators used a software program called "Carve This" to do the physical level search. This program is not commercially available and was designed for investigative purposes. It can find "remnants" of files that were overwritten or deleted from the hard drive as long as there is sufficient data to recover the file. The program searches everything on the computer, rather than simply searching the computer's directories. There was no direct testimony as to how Prosecution Exhibits 2 through 13 might have gotten on the appellant's computer hard drive; however, SA Fraser testified that the presence of the images on the hard drive was consistent with someone viewing them on the Internet and the images then being automatically saved to the hard drive by the web browser.

The 11 remaining images were found in the appellant's temporary Internet folders using a "logical level search." This search consisted of looking at the directory structure on the computer itself, much like one would search a filing cabinet. According to SA Fraser, an average user could see the files in the directory structures. He testified the files could be opened and viewed by clicking on the file name. However, as the defense pointed out at trial, there were numerous image files in the temporary Internet folders and the folders were not labeled in a way that readily identified their content.

The appellant argues he is not responsible for possession of any of the computer files containing Prosecution Exhibits 2 through 24 because the computer automatically saved them on the hard drive or in a temporary Internet file and therefore he could not have "knowingly" or "meaningfully" possessed these files. This logic is faulty and ignores other evidence.

First, the appellant was a subscriber to numerous e-groups described as nude teen sites, and thus the presence of remnant images on his computer hard drive would hardly be surprising, especially since testimony from a member of his unit established he was relatively sophisticated in computer matters. Additionally, an "electronic evidentiary trail" documents the appellant's possession of Pros-

ecution Exhibits 14 through 24. These images were attached to an email the appellant received at a password-protected email address specifically assigned to "Frank Sanchez." This email included Prosecution Exhibits 14 through 24 and was dated 13 May 2000. SA Fraser testified this email was opened on 2 August 2000, two days prior to the computer being seized. He further testified that this email was manipulated at some point. In this regard, he testified that his forensic examination of the computer indicated someone had initiated a "forward" attempt of this email on an unspecified date. He said the computer's internal records strongly suggested the email was successfully forwarded 17 seconds after initiation.

As we stated earlier, the test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, any rational factfinder could have found all of the essential elements beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. Every reasonable inference from the evidence of record will be drawn in favor of the prosecution. *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A. 1991). We conclude the evidence legally supports the allegation that the appellant knowingly and wrongfully possessed one or more images of child pornography. In addition, we are ourselves convinced beyond a reasonable doubt that the appellant knowingly possessed child pornography, images of actual children engaged in sexually explicit conduct. Article 66(c), UCMJ.

Finally, we have considered the appellant's final assignment of error as to the appropriateness of his sentence, raised pursuant to *Grostefon,* and conclude it is without merit.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *Reed,* 54 M.J. at 41. Accordingly, the approved findings and sentence are

AFFIRMED.

Senior Judge Burd participated in this decision prior to his departure from this Court.