# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant MARK S. SUWINSKI
## United States Air Force

## ACM 38424

## 20 November 2014

Sentence adjudged 22 March 2013 by GCM convened at Kadena Air Base, Japan.  Military Judge:  Gregory O. Friedland.

Approved Sentence:  Bad-conduct discharge and reduction to E-1.

Appellate Counsel for the Appellant:  Major Anthony D. Ortiz and Captain Lauren A. Shure.

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

HECKER, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of three specifications of wrongfully and knowingly possessing visual depictions of minors engaging in sexually-explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1]  The members sentenced him to a bad-conduct discharge, restriction to the limits of Kadena Air Base for two months, and reduction to E-1.  The convening authority approved the punitive discharge and reduction to E-1.

---

[1] The appellant was acquitted of a fourth specification alleging possession of similar images.

Before us, the appellant asserts: (1) the military judge erred in admitting, pursuant to Mil. R. Evid. 404(b), evidence of "child erotica" and images that did not meet the definition of child pornography; (2) the evidence was legally and factually insufficient to establish his guilt, as there was no evidence presented that his conduct was prejudicial to good order and discipline or service discrediting; and (3) the military judge erred in not suppressing his statement to investigators, and the evidence derived therefrom, because he was not advised of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831.[2] We disagree and affirm.

*Background*

The appellant's military duties required that he complete a "counterintelligence scoping polygraph" (CSP) examination, to be administered by an agent from the Air Force Office of Special Investigations (AFOSI). During the testing, the examiner considered the appellant's responses to several questions "significant" and asked additional questions to determine the reasons for his heightened physiological responses. In the discussion that followed, the appellant told the examiner that he had downloaded "porn" involving teens and internet models and, after additional questioning, that he had downloaded "child porn."

Following an Article 31, UCMJ, rights advisement, the appellant provided a written statement admitting that he had several "galleries" of images and movies involving nude and topless girls ranging in age from 6 to 16. He told the examiner he had developed an "interest in the young female form" and viewed the images to "satisf[y] [his] sexual urges." He further stated he had downloaded these images from various Internet sites, including some that had been shut down for distributing child pornography.

Agents obtained search authorizations for the appellant's dormitory room, vehicle, and work area, and seized computers and computer media, including several hard drives. A subsequent forensic analysis of the media found approximately 254 images and videos of minors engaging in sexually explicit conduct contained on four hard drives.

Additional facts necessary to resolve the assignments of error are included below.

*Admission of "Child Erotica"*

Among the items found on the appellant's computer media were stories about apparently fictional sexual encounters occurring at a preteen modeling agency, and approximately 23,000 images of minors that both sides agreed were properly classified as "child erotica" as they did not meet the definition of "minors engaged in sexually explicit conduct." Over defense objection, the military judge permitted the Government to

---

[2] This third issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

introduce these items pursuant to Mil. R. Evid. 404(b) as evidence of the appellant's knowledge and absence of mistake.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). We will not overturn a military judge's ruling unless it is "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous,'" *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)), or influenced by an erroneous view of the law. *Id.* (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

The test for admissibility of uncharged acts is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006) (quoting *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989)) (internal quotation marks omitted). Such permissible purposes include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Mil. R. Evid. 404(b).

We review the admissibility of uncharged misconduct under Mil. R. Evid. 404(b) using the three-part test articulated in *United States v. Reynolds*:

> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
>
> 2. What fact of consequence is made more or less probable by the existence of this evidence?
>
> 3. Is the probative value substantially outweighed by the danger of unfair prejudice?

29 M.J. 105, 109 (C.M.A. 1989) (citations, quotation marks, and ellipses omitted).

The appellant argues, as he did at trial, that the "child erotica" evidence failed the second and third prongs of the *Reynolds* test and should have been excluded.[3]

It is not unusual for this type of "child erotica"—images and stories—to be found in conjunction with images of child pornography (or, as charged in this case, visual depictions of minors engaging in sexually explicit conduct). As decades of military

---

[3] The appellant admitted to investigators that he downloaded the child erotica images and wrote the stories, thus satisfying the first *Reynolds* prong.

jurisprudence indicate, possession of this type of material *can* satisfy the second *Reynolds* prong, in that this evidence can tend to indicate knowledge of the nature of the contraband material and negate the possibility that the files were downloaded by accident or mistake. *See United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (allowing subscriptions "to numerous e-groups described as nude teen sites" as evidence of knowing possession of child pornography), *rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004); *United States v. Mann*, 26 M.J. 1, 2–4 (C.M.A. 1985) (providing that possession of magazines were admissible to prove the accused's intent to satisfy his sexual desires); *United States v. Rhea*, 29 M.J. 991, 998 (A.F.C.M.R. 1990) (providing that possession of books describing sexual exploitation of young girls was probative of motive), *set aside on other grounds*, 33 M.J. 413 (C.M.A. 1991); *United States v. Lips*, 22 M.J. 679, 682 (A.F.C.M.R. 1986) (holding that possession of graphically posed photographs showing women being sexually abused was a clear indication of the appellant's penchant for sexual aberration); *United States v. Woodyard*, 16 M.J. 715 (A.F.C.M.R. 1983) (holding that possession of homosexual magazines was probative of intent to commit sodomy).

Our civilian colleagues have reached similar conclusions. As observed by one federal district court: "[A] number of courts have upheld the admission of evidence that a defendant facing charges of possessing child pornography also possessed pornographic stories about children, reasoning that it shows the defendant's 'knowledge that the images he possessed contained pornography featuring children, and [are] thus admissible under Rule 404(b).'" *United States v. Tanguay*, 982 F.Supp. 2d 119, 123 (D.N.H. 2013) (quoting *United States v. Phipps*, 523 Fed. Appx. 498, 500 (9th Cir. 2013)). *See also United States v. Stewart*, 729 F.3d 517, 529 (6th Cir. 2013); *United States v. Shaffer*, 472 F.3d 1219, 1226 (10th Cir. 2007); *United States v. Grimes*, 244 F.3d 375, 384 (5th Cir. 2001).

Our superior court recently cited, with approval, a decision by the United States Court of Appeals for the Third Circuit holding that, in a prosecution for possession of child pornography, images of "child erotica," while legal to possess, may nonetheless be admitted to show intent to commit the charged offense. *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) (citing *United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010)).

Against this legal backdrop, we consider whether the military judge erred in finding that, in *this case,* the "child erotica" evidence met the second *Reynolds* prong. The threshold inquiry for this prong is whether this evidence is probative of a material issue other than the accused's character. *United States v. McDonald*, 59 M.J. 426, 429 (C.A.A.F. 2004). It must be logically relevant to a fact of consequence in the case by making that fact "more probable or less probable." *United States v. Staton*, 69 M.J. 228, 230–31 (C.A.A.F. 2010); Mil. R. Evid. 401. The defense theory at trial was that the appellant sought out and knowingly possessed images of minors who were nude and in

suggestive poses, but that he did not knowingly possess any images of minors engaging in sexually explicit conduct. The "child erotica" evidence directly contradicted that theory. Several of the images contained captions—written by the appellant—suggestive of sexually explicit activity between adults and minors. The "modeling agency" stories written by the appellant referenced models with the same names as the minors in the images depicting sexually explicit conduct. We conclude that the military judge did not abuse his discretion in concluding that this evidence satisfied the second *Reynolds* prong and thus was admissible to show the appellant's knowledge and the absence of mistake.

We likewise conclude that the military judge did not abuse his discretion in finding that the probative value was not substantially outweighed by the danger of unfair prejudice (the third *Reynolds* prong). This evidence was highly probative as it went to the heart of the key contested issues: knowledge and absence of mistake. Moreover, the military judge gave an appropriate limiting instruction to ensure the members would place the evidence in proper context, telling them that they could only consider the evidence for the specific limited purposes of knowledge and lack of mistake and for no other purpose. Court members are presumed to follow the military judge's instructions absent evidence to the contrary. *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990).

We therefore reject this assignment of error.

*Factual and Legal Sufficiency*

We review claims of factual insufficiency de novo. *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of appellant's guilt beyond a reasonable doubt. *Id.* at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all of the essential elements proven beyond a reasonable doubt. *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002).

The elements of each offense were:

> (1) that at the time and place alleged, the appellant knowingly and wrongfully possessed on an identified storage medium, visual depictions of minors engaging in sexually explicit conduct, and;

(2) that under the circumstances, the appellant's conduct was prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces.

*See Manual for Courts-Martial* (*MCM*)*, United States*, pt. IV, ¶ 60.b. (2008 ed.).

Before us, the appellant challenges the factual and legal sufficiency only with respect to the second element, arguing that the prosecution failed to introduce any evidence that his conduct was prejudicial to good order and discipline and/or service discrediting. The Government argues that prejudice to good order and discipline was established by the following evidence: (1) the appellant possessed the contraband images in Government quarters on a military installation; (2) the appellant began downloading images within the continental United States and exported them overseas when he was reassigned to Japan; and (3) the appellant's possession of contraband images would render him ineligible to maintain the security clearance necessary to perform his military duties. The Government further argues that, under the facts and circumstances of this case, the appellant's conduct was service discrediting.

"Conduct prejudicial to good order and discipline" is conduct which causes a reasonably direct and obvious injury to good order and discipline. *See MCM*, pt. IV, ¶ 60.c.(2)(a). "Service discrediting conduct" is conduct which tends to harm the reputation of the service or lower it in public esteem. *See MCM*, pt. IV, ¶ 60.c.(3). Although almost any irregular or improper act on the part of a servicemember could be regarded as prejudicial in some indirect or remote sense, only those acts in which the prejudice is reasonably direct and palpable are punishable under Article 134. *MCM*, pt. IV, ¶ 60.c.(2)(a). Similarly, only those acts which would have a tendency to bring the service into disrepute or which tend to lower it in public esteem constitute service discrediting conduct. *MCM*, pt. IV, ¶ 60.c(3).

A "low evidentiary threshold" is required to satisfy the so-called "terminal element(s)" of an Article 134 offense. *See United States v. Goings*, 72 M.J. 202, 206 n.5 (C.A.A.F. 2013) (citing *United States v. Phillips*, 70 M.J. 161, 163 (C.A.A.F. 2011) ("evidence that the public was actually aware of the conduct is not necessarily required" to support clause 2 of Article 134's terminal element); *United States v. Irvin*, 60 M.J. 23, 26 (C.A.A.F. 2004) (finding a sufficient factual basis to support clause 1 and clause 2 of Article 134's terminal element despite no evidence that any other servicemembers were aware of, or saw, the child pornography)).

As our superior court said in *Phillips*:

> The focus of [Article 134's] clause 2 is on the "nature" of the conduct, whether the accused's conduct would tend to bring discredit on the armed forces if known by the public, not

whether it was in fact so known. The statute, which requires proof of the "nature" of the conduct, does not require the government to introduce testimony regarding views of "the public" or any segment thereof. The responsibility for evaluation of the nature of the conduct rests with the trier of fact.

70 M.J. at 165–66.

We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom with respect to whether the appellant's conduct was prejudicial to good order and discipline and service discrediting. In viewing the evidence in the light most favorable to the Government, we conclude that a rational factfinder could have found beyond a reasonable doubt that the appellant's conduct met both definitions. He began downloading, storing, and organizing images of minors engaging in sexually explicit conduct at Whiteman Air Force Base in Missouri, retained the images during his permanent change-of-station move to Kadena Air Base, Japan, and possessed and viewed the images in government-owned housing at Kadena, an installation on foreign soil regulated by international agreements. We also conclude that a rational factfinder could have found beyond a reasonable doubt that the nature of the appellant's conduct would have brought the service into disrepute had it been known by the public. Finally, having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. We therefore reject this assignment of error.

*Admission of Statement to Investigators*

The appellant alleges, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that the military judge erred in not suppressing his statements to investigators, and the evidence derived therefrom, because he was not initially advised of his rights pursuant to Article 31, UCMJ.

When there is a motion to suppress a statement on the grounds that rights warnings were not given, we review the military judge's findings of fact under a clearly erroneous standard and his conclusions of law de novo. *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014). On a mixed question of law and fact, a military judge abuses his discretion when his findings of fact are clearly erroneous or his conclusions of law are incorrect. *Id.*

In this case, the military judge made extensive findings of fact which are amply supported by the record, not meaningfully contested upon appeal, and which we adopt and summarize here.

Prior to the CSP, the polygraph examiner was advised that the appellant was a maintainer on a national security asset, was not under investigation, and possessed an active top secret security clearance. The appellant signed an AFOSI Form 74, *Consent for Polygraph Examination*, prior to the CSP.

During the polygraph, the examiner concluded the appellant was exhibiting a "significant response" to certain espionage-related questions. The examiner was initially unsure whether the appellant misunderstood the questions, was nervous, or had other issues. He then paused the CSP, left the room, and reviewed data sources in an attempt to ascertain the reason for the appellant's significant responses. He found none and, at that point, did not suspect the appellant of a crime.

When the examiner continued the discussion with the appellant, the appellant told him he had downloaded movies, music, and pornography.[4] In response to a question, the appellant said that the pornography consisted of teenagers and internet models. The examiner pressed the appellant to be more specific about the pornography, saying, "Talk to me. There's not a damn thing you can say that's going to shock the hell out of me, trust me. I've been doing this s[**]t too far [sic] long." The examiner said there was "nothing [he] ain't heard," "[j]ust let it go[,]" "come on," and "what is it?" He further added: "We both know, just go ahead and tell me. Tell me. You are not telling me something I probably don't know, trust me. Go for it. You have no idea how much better you'll feel once you say it . . . ." Shortly thereafter, the appellant told the examiner he had downloaded child pornography.

The examiner then stopped the interview, removed the polygraph instrument components from the appellant, and terminated the CSP. He advised the appellant of his Article 31 rights, which the appellant waived both orally and in writing. The appellant then made several oral and written admissions about the images and videos he downloaded from the Internet. He also provided investigators consent to search his dormitory room, work center, storage units, vehicle, and locker. Later that day, investigators sought and received search authorizations from the appropriate authorities to search and seize property from the appellant's vehicle and dormitory room. During these searches, media containing child pornography was found.

The military judge cited and discussed the law applicable to these facts. He concluded that a reasonable investigator would have suspected the appellant of an offense by the time the examiner made the statements that immediately preceded the appellant's first admission. Because the appellant's statement that he downloaded child pornography was not preceded by Article 31 warnings, the military judge suppressed it. *See United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), *overruled in part by United States v. Jones*,

---

[4] Video and audio recordings of this interview were reviewed by the military judge during the Article 39(a), UCMJ, 10 U.S.C. § 839(a), session.

73 M.J. 357, 361–62 (C.A.A.F. 2014); *United States v. Morris*, 13 M.J. 297 (C.M.A. 1982); *United States v. Leiffer*, 13 M.J. 337 (C.M.A. 1982).

However, the military judge also concluded that the subsequent Article 31 rights advisement was properly administered and that the appellant's later oral and written statements were not coerced. He admitted those statements and the evidence derived therefrom. The appellant contends this ruling was an abuse of discretion.

As the military judge properly noted, when an earlier statement was "involuntary" only because the accused had not been properly warned of his Article 31(b), UCMJ, rights, the voluntariness of the second statement is determined by the totality of the circumstances. *United States v. Brisbane*, 63 M.J. 106, 114 (C.A.A.F. 2006). "The earlier, unwarned statement is a factor in this total picture, but it does not presumptively taint the subsequent statement," *id.* (quoting *United States v. Cuento*, 60 M.J. 106, 109 (C.A.A.F. 2004), and the absence of a cleansing statement in the later interrogations is not necessarily fatal to a finding of voluntariness. *Id.* The appropriate legal inquiry is whether the second confession was voluntary "considering all the facts and circumstances of the case including the earlier technical violation of Article 31(b)." *United States v. Phillips*, 32 M.J. 76, 80 (C.M.A. 1991).

We find no abuse of discretion in the military judge's rulings. While the examiner urged the appellant to waive his Article 31 rights, there was no evidence the examiner threatened, coerced, or otherwise unlawfully induced the appellant to do so. In considering the totality of the circumstances and finding the second confession to be voluntary, the military judge properly weighed the appellant's age, intelligence, and education; the length, nature, and tenor of the interview; the conduct of the interrogator; and the effect of the prior, unwarned statement upon the appellant's subsequent waiver of his rights. We therefore reject this assignment of error.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court